DAVID S. BLACKBURN *et al.*

*v.*

SARAH J. BELL.

1. IMPEACHING JUDGMENT—*of the manner thereof, and for what causes.* A record of a court imports a verity and can not be contradicted by parol evidence. It must be taken as showing the absolute truth, and must be tried by itself. What is or is not a record, is a matter of evidence, and any instrument offered as such may be shown to be forged or altered.

2. Where a bill in chancery seeking to enjoin the collection of a judgment at law, on the ground it was rendered by one having no judicial power and not the judge of the court, shows that the judgment is upon the records of the court, and that the record thereof still remains, and that there is no error apparent on the face of the record, and, moreover, its affirmance by the Supreme Court, it shows a valid judgment as tested by the record set out in the bill.

3. To impeach a judgment shown to be valid by the record, the party complaining must make it manifest that the judgment was the result of either fraud, accident or mistake, and that it is unjust, and was not the result of *laches* or misconduct on his part.

4. Where a bill to enjoin a judgment shows by its averments, and the implications flowing therefrom, that the plaintiff and defendant knowingly and willfully engaged in the perpetration of a fraud upon the law and the courts.—that, having a suit pending in the circuit court, they conspired together and had the issue submitted to a trial before one whom they knew to be a mere intruder upon the bench,—that they knowingly and willingly went through the trial before such person, and equally participated in the submission of a motion for a new trial, and in arrest of judgment, and in bringing the record to the Supreme Court showing the trial had been before the lawful judge, when, in fact, the judgment had been entered by such intruder upon the bench, and that they joined in palming off such record as the genuine record, it was *held*, that the complainant, being a party to such fraud, was not entitled to equitable relief. If such judgment was a fabrication, a party assisting in its fabrication and in giving it a standing as a judgment of a court, can have no standing in equity to vacate the same, and be relieved from the consequences of his own act.

5. If the wrongful acts of parties result in harm to the one and profit to the other, equity will not relieve the wrongdoer from the consequences of his own conduct. The court of chancery will close its doors against all who invoke its aid with unclean hands, and will leave them to their naked legal rights as best they may get them, in the courts of law.

6. ESTOPPEL—*admission of judgment by appeal bond.* The recital of a judgment in an appeal bond estops the obligors from denying the existence of such judgment, and if this estoppel is not so broad as to preclude an injunction as to a forged or fraudulent judgment, in equity, yet, if the party seeks in equity to be relieved from such solemn admission, he must not show himself a *particeps criminis* in the fabrication of the judgment, or in the fraud.

APPEAL from the Appellate Court of the Third District; the Hon. C. L. HIGBEE, Presiding Justice, and the Hon. O. L. DAVIS, and Hon. LYMAN LACEY, Justices.

Mr. ANTHONY THORNTON, for the appellants.

Mr. R. N. BISHOP, and Mr. J. B. MANN, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

An action of assumpsit was commenced in the Edgar county circuit court, by Sarah Jane Mann, now Sarah Jane Bell,

against David S. Blackburn, and the venue in said cause was afterwards changed to the Vermilion circuit court. At the regular February term, 1875, of the latter court, said suit was pending therein for trial; and in said cause, upon the records of said court for said term, appears the following judgment, which is entered as of the " 30th day of February Term, 1875, March 6, 1875 : "

" And now again come the parties hereto, by their respective attorneys, and the court having heard argument of attorneys herein on motions for a new trial and in arrest of judgment in vacation, and an agreement of the parties having been filed in this cause that the decision of the court on said motions should be entered of record as of the February term A. D. 1875, aforesaid, and now upon due consideration, the court being fully informed in the premises, said motions for new trial and in arrest of judgment are overruled.

" It is, therefore, ordered by the court, that the said plaintiff have and recover of and from the defendant David S. Blackburn said sum of $15,000 damages found by the jury aforesaid, together with the costs by her in her cause herein expended, with legal interest thereon from the 30th day of the February term A. D. 1875, to-wit, March 6th, 1875, and may have execution therefor against said defendant.

" Whereupon the defendant prays an appeal, which is granted by the court on defendant filing bond in the sum of $30,000, with security to be approved by the clerk of this court, by agreement, and by agreement of parties said bond to be filed within thirty days from July 9th, 1875, and bill of exceptions by agreement to be filed within ninety days from said day."

A copy of said judgment is filed with the bill of complaint hereinafter mentioned, as " exhibit A," and is the only portion of the record, or what purports to be the record in said action of assumpsit, that is set forth in or filed with said bill; the preceding orders, showing the submission of the case, trial by and verdict of the jury, and entry of motions for a

new trial and in arrest of judgment, being wholly omitted in the record now before us.

From this judgment, so appearing of record in the Vermilion circuit court, the appellant David S. Blackburn perfected an appeal to this court, by giving bond within the time limited in and by the foregoing order, in the sum of $30,000, with the co-appellants as securities; which said appeal bond was duly approved by writings indorsed thereon both by the clerk of the Vermilion circuit court and by the Hon. O. L. DAVIS, judge of said court. The condition of said bond, a copy of which is filed with the bill of complaint hereinafter mentioned, as an exhibit, and prayed to be taken as a part of said bill, was as follows:

" The condition of the above obligation is such, that, whereas the said Sarah Jane Mann did, on the 6th day of March, 1875, at a term of circuit court then being holden within and for the county of Vermilion, and State of Illinois, obtain a judgment against the above bounden David S. Blackburn, for the sum of $15,000.00, and costs of suit, from which judgment the said David S. Blackburn has prayed for and obtained an appeal to the Supreme Court of said State:

" Now, if the said David S. Blackburn shall duly prosecute said appeal, and shall, moreover, pay the amount of the said judgment, costs, interest and damages rendered and to be rendered against him, the said David S. Blackburn, in case the said judgment shall be affirmed in the said Supreme Court, then the above obligation to be null and void, otherwise to remain in full force and virtue."

The said judgment, so appealed to this court, was affirmed by us at the January Term, 1877, and a petition for a rehearing was considered and denied at the January term, 1878, and the case is reported in 85 Ill. 222. In the record then filed in this court, as is shown by the bill of complaint now under consideration, there was nothing to indicate otherwise than that the case had been duly tried and the judgment rendered by the legally elected and commissioned judge of the Vermil-

ion circuit court. No point or suggestion to the contrary was made, either in the motion entered for a new trial or in the motion in arrest of judgment, or upon the appeal to this court, or in the petition for a rehearing.

Said judgment having been affirmed by this court and remaining unpaid, the plaintiff in the original suit, who had meantime intermarried with one Bell, brought an action on the appeal bond, in the Edgar circuit court, to the March term, 1878; whereupon Blackburn, the defendant in the original suit, and the securities on the appeal bond, who are co-defendants with him in the action on the bond, filed the bill and amended bill which are now the subjects of controversy.

The bill, as amended, shows, substantially, the facts above stated, and charges there was no judge presiding in the circuit court of Vermilion county when said original suit was tried and the judgment therein rendered; that said circuit court, from the inception of said trial to its close, in the selection of a jury, in determining the admissibility of evidence, in the giving of instructions to the jury, in receiving the verdict of the jury, and in rendering the judgment aforesaid, was held, conducted and presided over, solely, by one E. S. Terry, who had never been, and was not at said time, judge of said circuit court, or of any court in the State of Illinois; that he had never been elected or appointed to the position of judge of any court in the State; that he made no pretence to be a judge, either *de jure* or *de facto;* that he had, at said time, no lawful power or authority to exercise judicial functions; and that he was, in presiding at said trial and holding said court, a mere intruder into the office of judge of said circuit court, in violation of the constitution and laws.

It is further charged, that said record is therefore false and fraudulent; that it purports to be the act of a judge, and the judgment of a court, when there was no judge and no court, and that it was made without any power and authority. It is also stated said pretended judgment was taken by appeal to the Supreme Court of the State, and there being no error

apparent in the record, it was by said Supreme Court affirmed, and that the same now remains in the said circuit court of Vermilion county, in full force, unreversed and unsatisfied, so far as the records of said court show, and that there is no error apparent in the record of said pretended judgment. The bill, as amended, prayed for a temporary injunction upon the proceedings in the case at law, pending in the Edgar circuit court, upon the appeal bond; and that the judgment appearing upon the records of the circuit court in Vermilion county, for $15,000, might be set aside, canceled, and for naught held, and adjudged and decreed to be void and of no effect; and that all proceedings in the suit on the appeal bond might, on the final hearing, be perpetually enjoined; and for general relief.

A demurrer to this bill, as amended, was sustained by the circuit court of Edgar county, and the bill was dismissed. An appeal was perfected to the Appellate Court of the Third District, and the decree of the circuit court, sustaining the demurrer and dismissing the bill, was there affirmed.

A further appeal was then taken to this court, and it is here urged the Appellate Court erred in affirming the decree of the circuit court, and in not reversing the same.

The case of *Hoagland* v. *Creed et al.* 81 Ill. 506, is not necessarily decisive of this case. There, the question arose upon a writ of error to the Morgan circuit court, and the record filed affirmatively showed a trial before a member of the bar, and what purported to be a judgment rendered by him as judge of the circuit court of Morgan county. That which purported to be a bill of exceptions was signed by him. The record expressly showed the case was tried by a member of the bar, and that his authority for assuming to act as judge was the agreement of the parties. The record did not purport to be a record made by a circuit judge. We there said: " It is impossible for us to close our eyes to the fact, however strongly we might be inclined to do so, that the record sought to be reviewed is one made by Edward P. Kirby, Esq., a

member of the bar, and not by any one commissioned to act as circuit judge." The subject of contradicting a record, or what purported to be a record of a court, did not arise in that case.

A record imports a verity; it can not be contradicted by parol evidence; it must be taken as absolute truth, and must be tried by itself. What is or is not a record is matter of evidence, and any instrument offered as such may be shown to be forged or altered. The bill avers, and the record exhibited with the bill shows, "the judgment is upon the records of the circuit court of Vermilion county, and the record thereof still remains in the said circuit court," and that "there is no error apparent on the face of the record," and, moreover, it has been affirmed by this court, and declared to be a valid and binding judgment. So, tested by itself, and by the whole record as it remains in the court, it is a valid judgment and a verity.

The court of chancery in the county of Edgar is called upon to enjoin the collection of a judgment of the law court rendered in Vermilion county, while that judgment remains of record in the latter court unreversed, affirmed by the supreme tribunal of the State, and with no error apparent upon its face. We will waive the question whether a court of equity may, under the law and statute of this State, expunge the record of a judgment appearing upon the records of another county.

It is clear the judgment proves itself a valid judgment, unless it can be impeached in the court of chancery. The latter court will not attempt to do this without it is made manifest the alleged judgment was the result of either fraud, accident, or mistake. There is no claim this judgment has been altered since it was entered upon the records of the court, nor is it even suggested there was any accident or mistake on the part of any body in the rendering of the judgment, or in the entry thereof upon the record. The case must be tested by the pleading, and the pleading must be taken most strongly

against the pleader. The theory of the bill and claim of appellants is, there was fraud in the entry of the judgment. Whoever come into the court of equity must come with clean hands, and must not come asking the court of conscience to aid them in getting relief from their own fraud or wrongful aet, or a fraud in the perpetration of which they knowingly participated.

Admit the allegations of the bill to be true. They, with the necessary implications that legally flow therefrom, show that appellee and the appellant Blackburn knowingly and willfully engaged in the perpetration of a fraud upon the law and the courts of the country; that having a suit pending, the one against the other, in the circuit court, they conspired together and had the issues joined therein submitted to a trial before one whom they knew to be a mere intruder upon the judicial bench ; that they knowingly and willingly went through with a trial before a jury impannelled by this intruder; equally participated in the trial; equally participated in the submission of the motions for a new trial and in arrest of judgment, and equally participated in having a record of this trial and its results entered up in the records of the court, not as it really was and according to the facts of the case, but as though, in fact and in truth, the trial had been before the lawful judge of the court, and as though the judgment had really been entered by such judge. Not only this, but they joined in palming off this record upon this court as the genuine record of the Vermilion circuit court. Only after we had carefully examined, and upon petition for rehearing had re-examined the record of the trial, and the alleged errors therein, and had found and announced there was no error in the proceedings, and that the trial had been fair, and a correct conclusion reached, and a just judgment rendered, did said appellant desist from aiding and abetting in the perpetration of the fraud. Grant the court of equity may enjoin or set aside the judgment of a court of law for fraud—yet it will

not do so at the suggestion of one of the perpetrators of the fraud.

In *Owens* v. *Ranstead*, 22 Ill. 162, where a bill had been filed to vacate a judgment and enjoin its collection, on the ground of a want of jurisdiction of the person of the defendant, this court said: "The power of a court of chancery to afford relief, in a case like this, properly made out, can not be questioned; but it must appear to the court that the party complaining has been guilty of no *laches* on his part, and that he has been deprived of the opportunity of asserting his rights, or making his defence, through some accident, or mistake, not of his own procurement, and to which he was not a willing party; for a party has no claim to come into a court of equity to ask to be saved from his own culpable misconduct." We then quoted with approval the language of the Supreme Court of the United States, in the case of the *Marine Insurance Co. of Alexandria* v. *Hodgson*, 7 Cranch, 332, to the effect that the fraud or accident must be unmixed with any fault or negligence in the complainant himself, in order to justify an application to a court of chancery.

In *Higgins* v. *Bullock*, 73 Ill. 206, it was said: "A court of chancery has the undoubted power to afford relief in a proper case against a judgment at law, but it must appear that the party complaining has been guilty of no negligence or *laches*, and that he has been prevented from interposing a defence through accident, fraud or mistake, without fault or blame on his part."

The appellants all joined in solemnly averring by their deed, under their hands and seals, the existence of the judgment in the Vermilion circuit court, and agreed to pay the amount due on said judgment in case the same should be affirmed in the Supreme Court. The bill filed by them is to be taken most strongly against them, and it must be presumed, in the absence of any allegations to the contrary, that they all well knew the case had been tried before one who was not the judge,—that the judgment had been entered by one who had no judicial

authority to enter it, and had been entered upon the records of the court as though rendered by the rightful judge. Appellants were all thus parties to the fraud upon the law, and knowingly and willfully assisted, by their own act and admission, in imposing upon this court as a judgment of the circuit court that which they knew to be a forgery or a fabrication. As the appellants made their bed, they must lie in it. If the judgment was a fabrication, appellants assisted in its fabrication and in giving it a standing as a judgment of a court. If a fraud has been perpetrated on the law and on the courts of the State, they assisted in its perpetration. Equity will leave them just where they have placed themselves. Appellants and appellee went hand in hand in the commission of a fraud. They must abide the result, for if the wrongful acts have resulted in harm to one party and profit to the other, then equity will not relieve the wrongdoers from the consequences of their own conduct, even against their fellow wrongdoer. The court of chancery will touch nothing that is impure, but will close its doors against all who seek to come within its portals with unclean hands, and will leave them to their naked legal rights, as best they may be able to get them, in the court of law.

Appellants have stated their own case for themselves. They have stated it as strongly as they truthfully can. They virtually admit the justice and equity of the claim of appellee. They do not allege there either was or is a defence to the suit in which the judgment was rendered. In *Owens* v. *Ranstead, supra,* it was shown the judgment was unjust and inequitable, and that the defendant in the suit at law was not indebted to the plaintiff therein in any sum whatever. In *Weaver* v. *Poyer et al.* 70 Ill. 570, the bill showed, by a detailed statement of facts, that the defendant had a complete and meritorious defence to the action at law in which the judgment was rendered. In the case of *Stokes* v. *Knarr,* 11 Wis. 391, the court said: "We do not deem it necessary to decide whether the justice of the peace lost jurisdiction of the case and power to enter any judgment by neglecting to make any minute of the

verdict, or to enter it in his docket until the day after it was received. It may be conceded, for the purpose of this case, that he did, and we still think it does not follow that a court of equity will interfere merely for a defect of jurisdiction in the court where the judgment is rendered. 2 Story Eq. Jur. sec. 898. On the contrary, they only interfere to prevent injustice. And if a party can say nothing against the justice of a judgment, can give no reason why, in equity, he ought not to pay it, a court of equity will not interfere, but will leave him to contend against it at law, in the best way he can."

Then, there is the matter of an estoppel. In the case of *Herrick* v. *Swartwout*, 72 Ill. 341, we said : "It was unnecessary to introduce a copy of the record appealed from, as it is recited in the condition of the bond, and the defendants were estopped from denying its existence." And in *George* v. *Bischoff et al.* 68 Ill. 237, it was said: "Defendants are estopped, by the recitals in the bond, to deny what they solemnly admit to be true, viz, the existence of a decree against Bischoff; and the legal effect of the engagement is, to pay it, in case it shall be affirmed on appeal, or be liable for the penalty of the bond." There are numerous other cases in this State where the same doctrine is announced. It is unnecessary here to say the principle of estoppel, as announced in the decisions referred to, has so broad an effect as would preclude an injunction as to all forged and fraudulent judgments, if appeals had been taken from them. Suffice it to say, that if complainants come within the precincts of a court of equity, and ask to be relieved from the results of a solemn admission, by deed, that there is a judgment of a court of competent jurisdiction, they must not show themselves to be *particeps criminis* in the fabrication of the judgment and in the fraud upon the law and the courts. Appellants, by their own showing, are in no position to raise, in the court of chancery, the questions they here seek to raise, and they show no grounds for equitable interference with that which, at law, must now be regarded as the judgment of a court of law.

We know of no instance where a court of equity has presumed to vacate or enjoin the collection of that which, upon the face of the record, was a valid judgment of a competent court of law, unless it was upon some established principle of equitable jurisdiction, and where such judgment was the result of either fraud, accident or mistake; nor do we know of any such interference where the party asking the assistance of the court was a party to the fabrication and fraud charged in his bill, or where there was no pretence that the claim or demand, from the payment of which it was sought to be relieved, was unjust, inequitable, unconscionable, or even a hardship.

We may well here go even farther than this. Under the circumstances of this case, as appellants had full knowledge of all the facts, which is the fair and legal presumption arising from their own statements, when they averred and covenanted in their deed that said judgment was 'a judgment of the Vermilion circuit court, they are now estopped from denying the existence of such judgment.

We are of opinion the demurrer to the original and amended bills of complaint was properly sustained, and the bills properly dismissed by the circuit court, and that the Appellate Court was right in affirming the decree.

The judgment of the Appellate Court is here affirmed.

*Judgment affirmed.*


Mr. JUSTICE SCHOLFIELD took no part in the decision of this case, having, at one time, been of counsel for appellee in the original subject matter of litigation.